UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DEREK MILLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>RAUL LABRADOR, Attorney General of the State of Idaho,<br><br>　　　　Defendant. | Case No. 1:23-cv-00424-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint and numerous other motions filed by Plaintiff. (Dkt. 55). The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' submissions. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). The Court grants Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint. (Dkt. 55) and dismisses this case with prejudice.

## BACKGROUND

In September 2023, Plaintiff, proceeding pro se, filed an eighty-nine-page complaint using the pseudonym "Doe."[1] The Clerk of the Court conditionally filed the complaint pending

---

[1] Plaintiff filed motions to proceed using a pseudonym. (Dkts. 1, 53). The Court notified Plaintiff that once Defendant had an opportunity to respond, the Court would rule on Plaintiff's request. (Dkt. 18 at p. 5; Dkt. 51 at p. 4). Thereafter, Plaintiff filed numerous motions in which he identified himself by name in the caption. (*See* Dkts. 57, 59, 62, 65). As a result, Plaintiff's request to proceed using a pseudonym is moot.

**MEMORANDUM DECISION AND ORDER - 1**

Plaintiffs' request to proceed in forma pauperis, which the Court granted. Plaintiff's complaint alleged nine claims for relief under 42 U.S.C. § 1983 against Defendant, Idaho's Attorney General Raul Labrador. Thereafter, Plaintiff filed various and duplicate motions including motions to seal his case, for appointment of counsel, for injunctive relief, for leave to amend—among other motions.

In response to Plaintiff's eighty-nine-page complaint, Defendant moved for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. (Dkt. 39). This filing in turn prompted Plaintiff to file more motions. On February 8, 2024, the Court issued an order addressing Plaintiff's outstanding filings, granting Defendant's Rule 12(e) motion for a more definite statement, and granting Plaintiff leave to file an amended complaint. (*See generally* Dkt. 51).

On February 12, 2024, Plaintiff filed a second amended complaint. (Dkt. 52). The upshot of Plaintiff's allegations is that Idaho's Sexual Offender Registration Notification and Community Right-to-Know Act (SORA), Idaho Code §§ 18-8301 - 18-311, violates the Fifth Amendment right against self-incrimination. (Dkt. 52 at pp. 33, 35). In response, Defendant moves to dismiss Plaintiff's second amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted and for failure to comply with Rule 8(a)(2) of the Federal Rules of Civil Procedure. (Dkt. 55).

Since Defendant's motion to dismiss, Plaintiff has continued to file various motions including, for example, another motion for injunctive relief and three motions to correct or amend his second amended complaint. (Dkts. 57, 59, 62). The Court grants Defendant's motion to dismiss for the reasons discussed below. That ruling, in turn, resolves Plaintiffs' outstanding filings as articulated in the order section below.

**LEGAL STANDARD**

For purposes of a motion to dismiss under Rule 12(b)(6), the court liberally construes the complaint in the plaintiff's favor and its allegations are taken as true. *Rosen v. Walters*, 719 F.2d 1422, 1424 (9th Cir. 1983). A dismissal under Rule 12(b)(6) is appropriate, however, where a complaint "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it requires "more than labels and conclusions." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). `"[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

**ANALYSIS**

**1. Plaintiff's Allegations**

Plaintiff is a convicted sex offender residing in Idaho, who is required to register under SORA. (Dkt. 52 at ¶ 1). Plaintiff asserts SORA violates the Fifth Amendment. (*Id.* at pp. 33-37). Specifically, Plaintiff challenges SORA's disclosure requirements under Idaho Code § 18-8305(1)(a)-(p). (Dkt. 52 at ¶ 49). These required disclosures include information about, for example, the offender's aliases, nicknames, pseudonyms, and monikers; his physical description; his birthdate and social security number; his criminal history; his physical addresses; his vehicle's license plate and its description; his email and instant messaging addresses; his phone numbers; his employment; his professional licenses; his passport; and his driver's license. Idaho Code § 18-8305(1)(a)-(p).

Challenging these disclosure requirements, Plaintiff alleges both a facial challenge and an as-applied challenge to SORA. In support of his facial challenge, Plaintiff alleges SORA "imposes an encyclopedic number of disclosures," which "facially violate the right against self-

incrimination." (Dkt. 52 at ¶¶ 163, 166). He alleges that "the only true use for the compelled disclosures are for criminal administration and as investigatory clues, leads, and links" "for ferreting out the continuum of past, present, and future criminal offenses in criminal investigations." (*Id.* at ¶ 164).

In support of his as-applied challenge, Plaintiff's allegations focus on the requirements that he disclose his email addresses and monikers. *See* I.C. § 18-8305(1)(a), (i) (requiring disclosure of "monikers used for self-identification in internet communications or postings" and of "[a]ny e-mail or instant messaging address"). Plaintiff alleges that when registering under SORA, he asserted his Fifth Amendment right against self-incrimination to disclosing his monikers and email addresses. (*See, e.g.*, Dkt. 52 at ¶ 96) (alleging Plaintiff asserted his right against self-incrimination to providing his "email(s) and moniker(s)" on "his 2023 annual registration").

Explaining his reasoning for asserting his Fifth Amendment privilege, Plaintiff alleges "he has committed a plurality of criminal acts between his release from probation and the present." (*Id.* at ¶ 138). His "email(s) and moniker(s) would be the only lead or clue linking his identity to the criminal acts committed." (*Id.* at ¶ 143). "Disclosing the email(s) and moniker(s) . . . would be a tacit admission [he] committed the criminal acts." (*Id.* at ¶ 146). For this reason, he asserted his right against self-incrimination "at his 2023 annual registration to the email(s) and moniker(s) line of compelled disclosure." (*Id.* at ¶ 96).

Since refusing to disclose his email addresses and monikers when registering under SORA, Plaintiff has asked Defendant to comment on Plaintiff's refusal to disclose this information, but Defendant has declined to do so. As Plaintiff alleges, "Defendant fails to approve or deny [Plaintiff's] assertion of the right against self-incrimination," to "acknowledge [Plaintiff's] assertion of the right," or "to instruct him" if Defendant "will actually honor [Plaintiff's] assertion

**MEMORANDUM DECISION AND ORDER - 4**

of the right against self-incrimination." (*Id.* at ¶¶ 76, 77). Plaintiff alleges Defendant's refusal to comment on Plaintiff's "assertion of the right against self-incrimination" constitutes a "failure to discharge [Defendant's] duties as the legal representative of the state of Idaho" causing Plaintiff injury. (*Id.* at ¶ 76). Plaintiff fears the "state of Idaho will pursue charges against him for failure to register"; will begin an "investigation to construct a criminal case" against him; or will "link" him to "the plurality of new crimes" he has committed. (*Id.* at ¶ 77).

### 2. § 1983 Claims

To the extent Plaintiff attempts to allege § 1983 claims for violations of his Fifth Amendment right against self-incrimination, those claims fail. The Fifth Amendment protects a person from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Section 1983 provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the Constitution. *Torres v. Madrid*, 592 U.S. 306, 310 (2021); *Buckley v. City of Redding*, 66 F3d 188, 190 (9th Cir. 1995). A person deprives another of a constitutional right within the meaning of § 1983 "if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quotation omitted).

To establish a violation of the Fifth Amendment in the criminal context, a plaintiff must prove two things. First, he must show "the testimony desired by the government carried the risk of incrimination." *United States v. Antelope*, 395 F.3d 1128, 1134 (9th Cir. 2005). "The Fifth Amendment privilege is only properly invoked in the face of a real and appreciable danger of self-incrimination." *Id.* (quotation omitted). If the threat is remote, unlikely, or speculative, the

privilege does not apply. *Id.* Second, the plaintiff must show the government sought to impose substantial penalties because he elected to exercise his Fifth Amendment right. *Id.*

In the civil context, however, an analysis the Fifth Amendment's protections is different, as the Ninth Circuit observed in *Antelope*. In *Antelope*, the Ninth Circuit discussed the Supreme Court's plurality decision in *Chavez v. Martinez*, 538 U.S. 760 (2003). In *Chavez*, the Court addressed Martinez's civil rights action under § 1983, alleging that Chavez, a police officer, had violated Martinez's Fifth Amendment rights by not reading him his *Miranda* rights. The Supreme Court concluded Chavez's failure to read *Miranda* warnings to Martinez was not grounds for a § 1983 action. *Chavez*, 538 U.S. at 772.

As the Ninth Circuit in *Antelope* explained, "[c]ritical to the reasoning of all six justices [in *Chavez*] was the simple principle that the scope of the Fifth Amendment's efficacy is narrower when used as a sword in a civil suit than when used as a shield against criminal prosecution." *Antelope*, 395 F.3d at 1141. In other words, absent criminal prosecution, a plaintiff "cannot obtain damages under § 1983 for [an] alleged violation of his Fifth Amendment self-incrimination rights because no criminal charges have been pursued against him." *Ferry v. Doohan*, No. 3:18-cv-00153-AC, 2018 WL 1173425, at *5 (D. Or. March 6, 2018); *see also Farmer v. Youhas*, 525 Fed. App'x 547, 548 (9th Cir. 2013) (affirming summary judgment in § 1983 action because plaintiff presented no evidence his incriminating statements were used against him in criminal proceeding); *Chavez v. Robinson*, No. 1:11-cv-03025-AA, 2018 WL 6497870, at *6 (D. Or. Dec. 10, 2018) (dismissing §1983 action alleging Fifth Amendment violation where there was no allegation or evidence that plaintiff made incriminating statement or that it was used against him); *cf. Stoot v. City of Everett*, 582 F.3d 910, 924-27 (9th Cir. 2009) (finding that a Fifth Amendment claim had

**MEMORANDUM DECISION AND ORDER - 6**

"ripened" when coerced confession was used to initiate and maintain a criminal case against plaintiff).

In this case, Plaintiff does not allege that any incriminating statements have been used against him in a criminal proceeding or otherwise. Indeed, Plaintiff does not allege he has made any incriminating statements to be used against him. Rather, he alleges he has asserted his Fifth Amendment right against self-incrimination. Unless and until Plaintiff is prosecuted or somehow penalized for asserting his Fifth Amendment rights while registering under SORA, he cannot seek relief under § 1983. Accordingly, Plaintiff's § 1983 claims fail to state a claim for relief.

### 3. Facial Challenge

To the extent Plaintiff's allegations assert a stand-alone Fifth Amendment claim facially challenging the constitutionality of SORA's required disclosures, those allegations also fail to state a claim for relief. To prevail on a facial constitutional challenge, a plaintiff has the heavy burden of establishing "no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987) "A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully." *Id.* Showing that an act "might operate unconstitutionally under some conceivable set of circumstances" is not enough to establish facial unconstitutionality. *Id.* The Supreme Court has ruled that "facial challenges are disfavored for several reasons." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).

First, "[c]laims of facial invalidity often rest on speculation. [Consequently], they raise the risk of premature interpretation of statutes on the basis of factually barebones records." *Id.* (quotation omitted). Second, facial challenges "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance

**MEMORANDUM DECISION AND ORDER - 7**

of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (quotation omitted). "Finally, facial challenges threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id.*

In this case, Plaintiff's facial challenge rests only on speculation. Specifically, Plaintiff speculates the State uses the information disclosed under SORA "as investigatory clues, leads, and links" to "ferret[] out the continuum of past, present, and future criminal offenses in criminal investigations." (Dkt. 52 at ¶ 164). Plaintiff provides no examples of any instances in which a registered offender's right against self-incrimination were allegedly violated. The only specific example Plaintiff offers in his complaint is that "when two neighborhood children went missing" his residence was "involuntarily searched" solely because he was a SORA "registrant." (*Id.* at ¶¶ 106, 113).

This singular allegation does not relate to Plaintiff's assertion of his Fifth Amendment right, however. Moreover, even assuming it did, the allegation is inadequate to establish the heavy burden showing "no set of circumstances exists under which the Act would be valid." *Salerno*, 481 U.S. at 745. As a court in this District has already ruled, SORA is not facially unconstitutional because it has a "legitimate sweep and is applicable to thousands of Idahoans who are required to register." *Does 1-134 v. Wasden*, No. 1:16-CV-00429-DCN, 2018 WL 2275220, at *5 (D. Idaho May 17, 2018) (internal quotation marks omitted). In other words, SORA is constitutional under numerous scenarios and, therefore, not facially invalid. *Id.*

4. **As-Applied Challenge**

Finally, Plaintiff's allegations that SORA's disclosure requirements as applied to him violate his Fifth Amendment right also fails to state a claim for relief. Generally, registration under

SORA does not subject a registrant to any additional criminal exposure or liability. *United States v. Juvenile Male*, 670 F.3d 999, 1011 (9th Cir. 2012). "Rather, it requires only an acknowledgement [the registrant has] been previously adjudicated or convicted of a crime." *Id.* Meanwhile, the Fifth Amendment is designed to protect against prospective incrimination." *Id.* To be "an unconstitutional registration would require [a] disclosure that is effectively an admission of uncharged criminal activity." *Id.*

As Defendant notes, however, the disclosure of email addresses and monikers is not an admission of uncharged criminal activity. Rather, there is nothing unlawful about having or using an email address or a moniker. In support of Defendant's proposition that the disclosure of such information is not self-incriminating, Defendant relies on *Baltimore City Dep't of Social Servs. v. Bouknight*, 493 U.S. 549 (1990), which is instructive. In that case, an abused child's mother had custody of the child subject to court-ordered supervision. *Id*. at 551-52. After concerns about the child's safety arose, the court ordered the child's removal from the mother's care; the mother failed to produce the child or reveal his location; and the court found the mother in contempt for failing to produce the child and rejected her claim that the contempt order violated her Fifth Amendment right against self-incrimination. *Id.* at 552-53.

Reversing the appellate court's ruling that the contempt order unconstitutionally compelled the mother to produce the child, the Supreme Court held the mother may not invoke the Fifth Amendment privilege against self-incrimination to resist the order. *Id.* at 551. The Court noted that "the Fifth Amendment's protection applies only when the accused is compelled to make a *testimonial* communication that is incriminating." *Id.* at 554 (quotation omitted). It explained that "when the government demands that an item be produced, the only thing compelled is the fact of the producing item," not a testimonial communication. *Id.* at 554-55 (quotation omitted). The

**MEMORANDUM DECISION AND ORDER - 9**

Court ruled that "a person may not claim the Amendment's protections based upon the incrimination that may result from the contents or the nature of the thing demanded" and that the mother may not claim the privilege based on anything an examination of the child might reveal. *Id.* at 555.

Similarly, in this case, Plaintiff cannot claim a constitutional violation if he were required to disclose his email addresses and monikers. The "existence, possession, or authenticity" of this information is not self-incriminating, despite that it might lead to incriminating information as Plaintiff's allegations suggest. *See id.*; *see also Melnick v. Camper*, 487 F. Supp. 3d 1039, 1054 (D. Colo. 2020) (rejecting plaintiff's argument that registering under Colorado SORA violated Fifth Amendment because "the police could use this evidence to establish a link or chain of evidence in a crime").

Plaintiff's reliance on *Albertson v. Subversive Activities Control Bd.*, 382 U.S. 70 (1965), is misplaced. That case is distinguishable. In that case, the Attorney General sought and obtained orders under the Subversive Activities Control Act of 1950, 50 U.S.C. §§ 781-798, requiring the petitioners to register on forms which required them to admit they were members of the Communist Party. *Albertson*, 382 U.S. at 195-96. Addressing the petitioner's Fifth Amendment challenge to the orders, the Supreme Court noted that "the risks of incrimination which the petitioner take in registering are obvious" because an admission of Community Party membership at that time would subject the petitioners to prosecution under several different statutes. *Id.* at 198. Because the "mere association with the Community Party" presented a sufficient threat of prosecution, the Court ruled the orders were inconsistent with the Fifth Amendment right against self-incrimination. *Id.*

**MEMORANDUM DECISION AND ORDER - 10**

In contrast to *Alberston*, Plaintiff in this case would not suffer prosecution because he disclosed his emails addresses and monikers. Unlike *Albertson* in which the petitioners were being ordered to admit unlawful conduct, having email addresses and monikers is not illegal. Accordingly, the Court finds that this case is more like *Bouknight* than *Alberston* and that the Fifth Amendment protection against self-incrimination does not apply to protect Plaintiff from disclosing his email addresses and monikers. Accordingly, Plaintiff's allegations asserting an as-applied constitutional challenge to SORA fail to state a clam for relief.

**5. Leave to Amend**

Since Defendant moved to dismiss Plaintiff's second amended complaint, Plaintiff has filed three separate motions to amend or correct his complaint, and indeed, he has filed a "corrected" complaint without the Court's leave. (Dkts. 59, 60, 62, 65). Generally, the court is "particularly liberal in construing" a complaint in a pro se litigant's favor. *Moore v. United States*, 193 F.R.D. 647, 651 (N.D. Cal. 2000) (citing *Glendora v. Cablevision Systems, Corp.*, 45 F.3d 36, 37 (2d Cir. 1995)). A court, however, may dismiss a pro se litigant's complaint without leave to amend if it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle him to relief and that this defect cannot be cured by amendment. *Moore*, 193 F.R.D. at 651. "When a litigant knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules, it is reasonable to conclude that the litigant simply *cannot* state a claim." *Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013).

Plaintiff has had three opportunities to submit a viable complaint, and the Court has previously set forth clear guidelines for Plaintiff to cure his pleading deficiencies. (*See, e.g.*, Dkt. 51 at p. 9). Nevertheless, Plaintiff has failed to cure those deficiencies and to follow the Federal Rules of Civil Procedure. Moreover, the Court concludes it appears beyond doubt that

MEMORANDUM DECISION AND ORDER - 11

Plaintiff cannot prove a set of facts entitling him to relief. Accordingly, the Court denies Plaintiff's requests to amend or correct his complaint, dismisses his second amended complaint with prejudice, and strikes his Corrected Second Amended Complaint (Dkt. 60), which Plaintiff filed without leave.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. 55) is **GRANTED**.

2. Plaintiff's Certified Second Amended Complaint (Dkt. 52) is **DISMISSED WITH PREJUDICE**.

3. Plaintiff is **DENIED** leave to file a third amended complaint, including Plaintiff's Motion for Leave for Corrected Second Amended Complaint to Name Real Party of Interest (Dkt. 59), Plaintiff's Motion for Leave to File Corrected or Amended Complaint (Dkt. 62), and Plaintiff's Motion to Amend Complaint First Cause of Action vs. As-Applied (Dkt. 65).

4. Plaintiff's Corrected Second Amended Complaint (Dkt. 60) is stricken.

5. Plaintiff's Motion to Proceed under Pseudonym (Dkt. 53) and Emergency Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction in Camera Hearing Requested (Dkt. 57) are **DENIED AS MOOT**.

DATED: March 12, 2024

Amanda K. Brailsford
U.S. District Court Judge